## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UNIFACE B.V., a Dutch Limited Liability Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 20 C 6478 |
| SYSMEX AMERICA, INC., | ) ) | Judge John Z. Lee |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Uniface B.V. ("Uniface") has filed this suit against Sysmex America, Inc. ("Sysmex") under 17 U.S.C. § 501, alleging copyright infringement and contributory copyright infringement of its registered copyrights. Sysmex has moved to dismiss the complaint under the doctrine of *forum non conveniens*, or, alternatively, to stay the proceedings pursuant to the *Colorado River* abstention doctrine. Sysmex has alternatively moved to dismiss the claims under Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons provided below, the motion is denied.

## I. Factual Background[1]

Uniface owns valid copyrights in the Uniface Software Platform—a series of development tools that help software developers quickly and efficiently adapt to new

---

[1] On a motion to dismiss, the Court views "the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [its] favor." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 454 (7th Cir. 2020) (internal quotations omitted).

technologies and user preferences and permit effective development and deployment methodologies. Compl. ¶¶ 8, 9, ECF No. 1. The copyrights in the Uniface Software Platform are registered with the United States Copyright Office under the following copyright registration numbers (the "Uniface Copyrights"):

| | | |
|---|---|---|
| TX0001434087 | TX0008287014 | TXu001263231 |
| TX0004717243 | TX0008383243 | TXu001266670 |
| TX0005005452 | TX0008384931 | TXu001268251 |
| TX0005226249 | TX0008445094 | TXu001291464 |
| TX0007977063 | TX0008445102 | TXu001344251 |
| TX0008048368 | TX0008711369 | TXu001631221 |
| TX0008183233 | TX0008711793 | TXu001631463 |
| TX0008183393 | TX0008711795 | TXu001775198 |

*Id.* ¶ 9.

On January 29, 2002, Uniface's predecessor-in-interest, Compuware N.V., entered into a Value-Added Reseller ("VAR") Agreement with Sysmex. *Id.* ¶ 11. Sysmex distributes and supports automated *in vitro* diagnostic hematology, flow cytometry, technology solutions; coagulation and urinalysis analyzers; reagents; and information systems for laboratories and healthcare facilities in North and South America. *Id.* ¶ 15. Under the terms of a standard VAR Agreement, Uniface's customers (here, Sysmex) pay Uniface a fee to license the Uniface Software Platform for development, testing, and demonstration purposes. *Id.* ¶ 10. Additionally, Uniface's customers pay an ongoing royalty for each of their end users to whom they

provide the software developed using the Uniface Software Platform ("Uniface Platform"). *Id.* This royalty payment permits Uniface's customers to sublicense the deployment portion of the Uniface Platform to their end users. *Id.*

Pursuant to the January 29, 2002, VAR Agreement, Sysmex was given access to the Uniface Platform, including the Uniface Copyrights. *Id.* ¶ 12. Using the Uniface Platform, Sysmex developed its Work Area Management ("WAM") software, and distributed sublicenses of the Uniface Platform to at least 515 entities throughout the United States. *Id.* ¶¶ 16, 17. The WAM software is a "middleware" product, *i.e.*, a software component that connects one software application to another. *Id.*

The VAR Agreement with Sysmex terminated on or around January 29, 2020, after Uniface provided Sysmex a valid notice of termination. *Id.* ¶ 18. Pursuant to the VAR Agreement, Sysmex was required to destroy all copies and parts of the Uniface Platform upon this termination. *Id.* ¶ 19. However, Sysmex maintained a limited right to use the Uniface Platform to maintain its existing customer software for six months following the termination, *i.e.*, until July 29, 2020. *Id.* Sysmex never provided proof that any copies and parts of the Uniface Platform were destroyed, including both those subject to the January 29, 2020, termination, as well as the July 29, 2020, extension. *Id.* ¶¶ 20–22.

Uniface and Sysmex are involved in ongoing litigation in Belgium over the amount of royalties paid during the term of the now-terminated contract. *Id.* ¶ 24. Through the Belgium litigation, Uniface learned that Sysmex continues to use the

Uniface Platform to "provide adaptive maintenance . . . to the existing End Users." *Id.* ¶¶ 25–27.

Uniface brings this suit, alleging that by continuing to use, modify, alter, upgrade, recompile, and add features to the Uniface Platform without authorization, Sysmex and its customers have infringed the Uniface Copyrights. *Id.* ¶ 28. Specifically, the Complaint alleges copyright infringement (Count I) and contributory copyright infringement (Count II). Citing the forum-selection clause in the agreement, Sysmex has moved to dismiss all counts under the doctrine of *forum non conveniens*, or alternatively, to stay the proceedings pending resolution of the parties' ongoing litigation in Belgium. Additionally, Sysmex has moved to dismiss all counts pursuant to Rule 12(b)(6).

## II.   <u>Analysis</u>

### A.   **Motion to Dismiss Under the Doctrine of *Forum Non Conveniens***

Sysmex first moves to dismiss Uniface's claims under the doctrine of *forum non conveniens*. For the reasons provided below, the motion is denied.

#### 1.   **Legal Standard**

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). A forum-selection clause "may be enforced through a motion to transfer under § 1404(a)." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013).

A forum-selection clause may be mandatory or permissive. *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 755 (7th Cir. 1992). Such a clause is mandatory where the "language is obligatory" and "clearly manifests an intent to make venue compulsory and exclusive." *Id.* at 756. If a valid and mandatory forum-selection clause governs the dispute, the clause "[should be] given controlling weight in all but the most exceptional cases," "the plaintiff's choice of forum merits no weight," and "the party defying the forum-selection clause . . . bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine Constr. Co.*, 571 U.S. at 63 (internal quotation marks omitted). In this situation, the Court may not consider arguments about the parties' private interests because "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient." *Id.* at 64.

On the other hand, where such "obligatory" language is absent, the forum-selection clause is permissive and the "inquiry requires the same balancing of factors as in § 1404(a) motions." *IT Convergence, Inc. v. Kunder* ("*Kunder*"), No. 19-CV-6787, 2020 WL 1888918, at *2 (N.D. Ill. Apr. 16, 2020) (citing *Atl. Marine Constr. Co.*, 571 U.S. at 60). That is, the Court has the discretion to dismiss the case in favor of an adequate alternative forum if the "dismissal would serve the private interests of the parties and the public interests of the alternative forums." *Fletcher v. Doig*, 125 F. Supp. 3d 697, 711 (N.D. Ill. 2014) (citing *Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enter. Fund*, 589 F.3d 417, 424 (7th Cir. 2009)).

## 2.    The VAR Agreement's Forum-Selection Clause

There is no dispute that the VAR Agreement includes a forum-selection clause. The VAR Agreement provides, in relevant part:[2] "This Agreement will be governed by the laws of Belgium and the parties agree to submit disputes that cannot be resolved amicably, to the jurisdiction of Belgium." Pl.'s Mem. Supp. Mot. Prelim. Inj., Ex. A, VAR Agreement ¶ 14.1, ECF No. 6-1.

The parties dispute whether the clause is mandatory or permissive. Notably, the parties each argue that the court's analysis of a similar forum-selection clause in *Kunder* supports its position. In that case, the forum-selection clause provided that the agreement "shall be governed and construed in accordance with the laws of [Illinois]" and that the parties "consent[ed] to the jurisdiction of the courts of the State of Illinois with venue in DuPage County." *Kunder*, 2020 WL 1888918 at *1. Uniface argues that *Kunder* finds the clause permissive, and that the forum-selection clause of the VAR Agreement "is even more permissive," as it does not reference venue. Pl.'s Opp'n Mot. Dismiss or Stay ("Pl.'s Opp'n") at 6, ECF No. 24. By contrast, Sysmex argues that *Kunder* finds the clause mandatory "by its use of 'shall,' despite the absence of the word 'exclusively.'" Def.'s Reply Mem. Supp. Mot. Dismiss or Stay ("Def.'s Reply") at 5, ECF No. 25. Sysmex asserts the forum-selection clause, agreeing to jurisdiction in Belgium, "should receive the same analysis as the mandatory clause

---

[2]      Because Uniface has provided a copy of the Agreement and it is central to its claims, *see* Compl. ¶¶ 10–12, the Court may rely upon it when ruling on the present motion. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (stating that a court may consider "documents that are attached to the complaint [and] documents that are central to the complaint and are referred to in it").

in *Kunder*." *Id.*

But the court in *Kunder* held that the use of "shall" in the clause pertained only to the governing law, not jurisdiction or venue. *Kunder*, 2020 WL 1888918, at *2. Instead, the court found the clause to be akin to a "consent to forum-selection clause," which did not prohibit litigation elsewhere because it did not include any qualifying language, such as the term "exclusive." *Id.*

Similarly, here, the forum-selection provision in the VAR Agreement is permissive. The first clause in the sentence includes a governing law provision (*i.e.*, that the Agreement "will be governed by the laws of Belgium") and the second clause includes a forum-selection provision. The latter merely provides that the "parties agree to submit disputes . . . to the jurisdiction of Belgium." As in *Kunder*, this is a "consent to forum-selection clause" and includes no language rendering exclusive the jurisdiction of Belgium. Moreover, the Seventh Circuit has said that "where venue is specified with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive." *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006). Here, the clause provides only the jurisdiction, *i.e.*, Belgium, and includes no further language indicating any intent to make venue exclusive. Accordingly, the forum-selection clause is permissive.

### 3. Traditional *Forum Non Conveniens* Analysis

Because the forum-selection clause is permissive, the Court has the discretion

to dismiss under the traditional *forum non conveniens* analysis. The first step requires the Court to determine whether Belgium is an adequate alternative forum. "Assessing whether an alternative forum exists involves a two-part inquiry: availability and adequacy." *In re Bridgestone/Firestone, Inc.*, 420 F.3d 702, 704 (7th Cir. 2005) (citing *Kamel v. Hill-Rom Co.*, 108 F.3d 799, 802 (7th Cir. 1997)). A forum is "available" if all parties are amenable to process and are within the forum's jurisdiction, and a forum is "adequate" if the parties will not be deprived of all remedies or treated unfairly." *Id.*

Here, the Court finds that Belgium is an available forum. The parties agreed to a forum-selection clause expressly providing that Belgium is a forum suitable to both parties. Furthermore, the parties are currently engaged in ongoing litigation in Belgium to resolve disputes concerning the amount of royalties paid during the term of the now-terminated VAR Agreement. From these facts, it is clear that the parties are amenable to process and within Belgium's jurisdiction. *Id.* Thus, Belgium is an "available" alternative forum.

The parties dispute, however, the adequacy of the Belgian courts in resolving the underlying copyright infringement claims. Neither party cites to any controlling authority regarding the adequacy of foreign courts for resolving intellectual property disputes, and the Seventh Circuit has not spoken on this issue.

Uniface places its stock in *I.A.E., Inc. v. Shaver*, for its statement that "[f]ederal courts have original and exclusive jurisdiction over copyright actions." 74 F.3d 768, 774 n.4 (7th Cir. 1996). The Court notes, however, that the Seventh Circuit in *I.A.E.,*

8

*Inc.* was distinguishing between the jurisdiction of U.S. federal courts and *state courts* over copyright claims. Because the instant case does not involve the jurisdiction of state courts, but, rather, the jurisdiction of foreign courts to adjudicate copyright claims, the Court finds *I.A.E., Inc.,* unhelpful.

For its part, Sysmex leans on *Color Switch LLC v. Fortafy Games DMCC*, for its supposition that "[t]here is simply no support for the argument that 28 U.S.C. § 1338(b) bars foreign courts from applying United States copyright law." 377 F. Supp. 3d 1075, 1083 (E.D. Cal. 2019). But the Federal Circuit has cautioned against the wholesale transfer of intellectual property cases to foreign jurisdictions. *See Halo Creative & Design Ltd. v. Comptoir Des Indes Inc.*, 816 F.3d 1366 (Fed. Cir. 2016). There, the Federal Circuit noted:

> It is particularly important that a *forum non conveniens* movant demonstrate the adequacy of an alternative forum when the dispute implicates the enforcement of intellectual property rights. The policies underlying United States copyright, patent, and trademark laws would be defeated if a domestic forum to adjudicate the rights they convey was denied without a sufficient showing of the adequacy of the alternative foreign jurisdiction.

816 F.3d at 1373.

To support its assertion that Belgium is an adequate forum for resolving the copyright dispute, Sysmex argues that "Belgium's experience with copyright law goes back to 1866 and now incorporates principles of several international copyright treaties." Def.'s Mem. Supp. Mot. Dismiss or Stay ("Def.'s Mem.") at 5, ECF No. 21. Sysmex further relies upon the declaration of Mr. Benoit Van Asbroeck, its Belgian attorney who is one of "only 12 experts whom the King of Belgium has appointed to

9

advise the Belgian Government on copyright legislation." *Id.* at 5 n.4. But here again *Halo* is instructive.

With respect to a foreign country's participation in international copyright treaties, like the Berne Convention, the Federal Court in *Halo* did not find this factor persuasive, observing that such a treaty "does not require that member countries provide remedies for extraterritorial infringing activity." 816 F.3d at 1371. Furthermore, the court distinguished cases similar to *Color Switch*, noting that in such cases there was "at least a predicate infringing act" that occurred in the forum jurisdiction. *Id.* Here, however, there was no such act. Indeed, as admitted by Mr. Van Asbroeck in his declaration, the alleged violations of Uniface's copyrights "do not concern any use, reproduction, or distribution by Sysmex of the copyrighted Uniface software on the Belgian territory." Def.'s Mem., Ex. A., Van Asbroeck Decl. ¶ 3, ECF No. 21-1. Rather, "all alleged violations . . . have taken place in the US or Canada." *Id.* Accordingly, Sysmex has failed to provide sufficient evidence that Belgium is an adequate forum to redress copyright infringement that occurred in the United States.

Because Belgium is not an adequate alternative forum, no further consideration of the private and public interest factors is needed. *See In re Bridgestone/Firestone, Inc.*, 420 F.3d at 704. Thus, the motion to dismiss under the doctrine of *forum non conveniens* is denied.

## B. Motion to Stay Under *Colorado River* Abstention Doctrine

Sysmex alternatively moves to stay the case under the *Colorado River* abstention doctrine. For the reasons provided below, this request also is denied.

1. **Legal Standard**

The *Colorado River* doctrine provides that "a federal court may stay or dismiss a suit in federal court when a concurrent state court case is underway, but only under exceptional circumstances and if it would promote wise judicial administration." *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) (quoting *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976)) (cleaned up). The Seventh Circuit has extended the doctrine to situations where there is a concurrent foreign case. *See AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 517 (7th Cir. 2001).

At the same time, the Supreme Court has "cautioned that abstention is appropriate only in exceptional circumstances and has also emphasized that federal courts have a virtually unflagging obligation to exercise the jurisdiction given them." *AXA Corp. Sols. v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 278 (7th Cir. 2003) (cleaned up). The Court's task "is not to find some substantial reason for the exercise of federal jurisdiction . . . ; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of justifications, that can suffice under *Colorado River* to justify the surrender of that jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25–26 (1983) (cleaned up).

The Court's analysis under *Colorado River* involves two steps. First, it must determine "whether the state and federal court actions are parallel." *Freed*, 756 F.3d at 1018. "If the actions are not parallel, the *Colorado River* doctrine does not apply and the court need not address the second part of the analysis." *Id.*

If the proceedings are parallel, the Court must weigh ten non-exclusive factors that include: (1) whether the foreign forum has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law; (6) the adequacy of the foreign action to protect the federal plaintiff's rights; (7) the relative progress of the proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *See Tyrer v. City of S. Beloit, Ill.*, 456 F.3d 744, 754 (7th Cir. 2006). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colorado River*, 424 U.S. at 818–19. Furthermore, "because of the presumption against abstention, absent or neutral factors weigh in favor of exercising jurisdiction" and against abstention. *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 648 (7th Cir. 2011).

### 2.     Parallelism of Federal and Belgian Actions

The first question is whether this action and the concurrent Belgian action are parallel. Concurrent actions are parallel for purposes of the *Colorado River* doctrine when there is "a substantial likelihood that the foreign litigation will dispose of all claims presented in the federal case." *AAR Int'l, Inc.*, 250 F.3d at 518 (citing *Day v. Union Mines Inc.*, 862 F.2d 652, 656 (7th Cir. 1988)) (internal quotation marks omitted). Courts consider whether the actions concern substantially the same

parties, legal allegations, and underlying facts. *See Freed*, 756 F.3d at 1018–19. Courts also consider whether the concurrent actions would be resolved through examination of the same set of evidence. *See Huon*, 657 F.3d at 647. "If there is any doubt that cases are parallel, a district court should not abstain." *Id.* at 646 (citing *AAR Int'l, Inc.*, 250 F.3d at 520. Here, the Court finds the actions are not parallel.

As a preliminary matter, the Court recognizes that the named parties in the Belgian case and the present case are substantially the same. Although the Belgian case additionally names Sysmex Corporation, the parent of Sysmex, "[c]omplete identity of parties . . . between the two actions is not required." *P&P Mktg., Inc. v. Ditton*, 746 F. Supp. 1354, 1371 (N.D. Ill. 1990) (citing *Lumen Constr., Inc. v. Brant Constr. Co., Inc.*, 780 F.2d 691, 696 (7th Cir. 1985)). Thus, the Court agrees with Sysmex that the inclusion of Sysmex Corporation as a named party in the Belgian case is immaterial to the analysis. *See* Def.'s Mem. at 8 n.6.

The two proceedings, however, do not contain substantially the same legal allegations or underlying facts, let alone the same evidence. Of course, the mere fact the legal theories of liability differ does not render the cases not parallel. *See Kupferberg, Goldberg & Niemark, L.L.C. v. Father & Son Pizza, Ltd.*, No. 95 C 3690, 1996 WL 111900, at *2 (N.D. Ill. Mar. 12, 1996) (finding concurrent state and federal cases parallel where the actions arose out of the same transaction, despite the state case involving tort and contractual claims and the federal case involving copyright and trade secret claims). But there are more substantive differences here. For example, the Belgian litigation concerns "the amount of royalties paid during the

13

term of the now-terminated contract," while the present case concerns the continued, unauthorized use of the Uniface Platform following termination of the contract. Compl. ¶ 24; Pl.'s Opp'n at 13–14. As Uniface frames it, "the Belgian case involves Sysmex's *pre*-termination use and distribution of the software while this case involves Sysmex's *post*-termination unauthorized" use. Pl.'s Opp'n at 13 (emphasis in original). That is, the extent of any alleged copyright infringement in the Belgian case is limited to conduct occurring within the scope of the VAR Agreement in connection with the payment (or nonpayment) of royalties.

By contrast, here, the alleged copyright infringement did not occur within the scope or duration of the VAR Agreement. Rather, this suit was initiated after Uniface learned—during the course of the Belgian litigation—that Sysmex continues to use the Uniface Platform. Compl. ¶¶ 25–28. Sysmex argues that Uniface has created an "artificial distinction" between the two cases, and that the same evidence will determine whether it has infringed Uniface's copyrights. Def.'s Mem. at 11; Def.'s Reply at 4. In particular, Sysmex argues that it "intends to rely on the contract in its defense," namely, "an evaluation of the VAR license agreement to determine whether, as Sysmex contends, its terms permit Sysmex to take the actions it has taken since July 29, 2020." Def.'s Mem. at 10. This may be so, but this is just a subset of the issues that will determine the outcome of the litigation before this Court.

Because the present case involves allegations of conduct that exceed the scope of the VAR Agreement that forms the basis of the concurrent Belgian litigation, the Court finds that the cases do not contain substantially the same legal allegations or

underlying facts; therefore, the cases are not sufficiently parallel to trigger abstention under *Colorado River*.

### 3. Nonexclusive Factors Warranting *Colorado River* Abstention

Furthermore, even if the cases were parallel, there is no "exceptional circumstance" here to warrant abstention. *See Colorado River*, 424 U.S. at 813. This is evident when one considers the remainder of the ten nonexclusive factors.

### a. Whether Belgium Has Assumed Jurisdiction Over Property

The parties agree that physical property is not at issue in this case. *See* Def.'s Mem. at 11; Pl.'s Opp'n at 15. Accordingly, the Court finds this factor weighs against abstention.

### b. Inconvenience of the Federal Forum

The parties agree that litigating in this District would not be inconvenient. Def.'s Mem. at 11; Pl.'s Opp'n at 15. The Court therefore finds this factor weighs against abstention.

### c. Desirability to Avoid Piecemeal Litigation

Sysmex argues that the desirability to avoid piecemeal litigation weighs in favor of abstention, on the grounds that allowing Uniface's federal copyright case to proceed simultaneously with the Belgian case "would result in duplicative proceedings and possibly inconsistent rulings." Def.'s Mem. at 11. Uniface counters that because the two cases involve different claims and different facts, "the Belgian proceeding has no impact here." Pl.'s Opp'n at 15.

Given that the Court finds that the present case involves conduct exceeding

15

the scope of the VAR Agreement, which is the subject of the Belgian litigation, it is unlikely that the disposition of the Belgian litigation will resolve the claims alleged here. Accordingly, the Court agrees with Uniface that this factor weighs against abstention.

### d. Order in Which Jurisdiction was Obtained

Sysmex asserts that Belgium obtained jurisdiction nearly seven months before Uniface's federal claims were filed. Def.'s Mem. at 12. Uniface concedes this point. Pl.'s Opp'n at 15. The Court therefore finds this factor weighs in favor of abstention.

### e. Source of Governing Law

Next, Sysmex argues that, per the governing law provision of the VAR Agreement, Belgian law will govern the dispute. Def.'s Mem. at 12. By contrast, Uniface argues that the dispute will be governed by U.S. copyright law.

Because the alleged infringement occurred beyond the scope of the VAR Agreement, the Agreement's governing law provision is immaterial to this case. More specifically, because the governing law provision of the VAR Agreement fails to demonstrate any intent to govern non-contractual disputes, the Court will not enforce the provision against Uniface's post-termination copyright infringement claims. *See Kuehn v. Childrens Hosp., Los Angeles*, 119 F.3d 1296, 1302 (7th Cir. 1997) (stating that governing law provisions "will not be construed to govern tort as well as contract disputes unless it is clear that this is what the parties intended."); *see also Naturalock Sols., LLC v. Baxter Healthcare Corp.*, No. 14-CV-10113, 2016 WL 5792377, at *4 (N.D. Ill. Oct. 4, 2016) (finding that, where a governing law provision does not

16

"expressly extend to any and all claims arising out of the agreement," the provision will not be enforced against non-contractual claims) (citing *Kuehn*, 119 F.3d at 1302). As in *Naturalock*, the governing law provision of the VAR Agreement provides only that the Agreement "will be governed by the laws of Belgium," and therefore demonstrates no intent that it applies to non-contractual claims. Accordingly, the Court agrees with Uniface that United States law will govern this dispute. This factor weighs against abstention.

### f. Adequacy of Belgian Action to Protect Uniface's Federal Rights

Sysmex argues that Uniface filed the Belgian suit "seeking the same relief it seeks here" and, therefore, Uniface cannot now assert that the Belgian suit cannot adequately protect its rights. Uniface asserts that it has expressly disclaimed any intention to pursue post-termination infringement claims in Belgium and that the Belgian action cannot protect Uniface's copyrights.

Putting Uniface's disclaimer to the side, the Court agrees that Belgium cannot adequately protect its United States copyrights. As the Court has already noted, Belgium is not an adequate forum to resolve the alleged infringement occurring within the United States. "The policies underlying United States copyright, patent, and trademark laws would be defeated if a domestic forum to adjudicate the rights they convey was denied without a sufficient showing of the adequacy of the alternative foreign jurisdiction." *Halo*, 816 F.3d at 1373. As a result, the Court finds that this factor weighs against abstention.

17

### g. Relative Progress of Federal and Belgian Proceedings

Sysmex asserts the Belgian proceedings are far more advanced than the present case. Def.'s Mem. at 12. Uniface concedes this point. Pl.'s Opp'n at 16. The Court therefore finds that this factor weighs in favor of abstention.

### h. Presence or Absence of Concurrent Jurisdiction

The parties disagree on whether the Belgian court has concurrent jurisdiction over Uniface's copyright claims. Notably, "this factor is minimally probative of whether exceptional circumstances exist to justify abstention." *Cramblett v. Midwest Sperm Bank*, 230 F. Supp. 3d 865, 873 (N.D. Ill. 2017).

Again, the Court finds that the Belgian court is not adequate to resolve the alleged infringement where infringement occurred within the United States. While Sysmex cites *Color Switch* to argue the isolated support for foreign courts' ability to apply U.S. intellectual property law, as noted above and admitted by Sysmex's Belgian counsel, there is no predicate infringing act occurring in Belgian territory. Therefore, the Court finds that this factor weighs against abstention.

### i. Availability of Removal

Sysmex asserts it cannot remove or otherwise transfer the Belgian case to this Court. Def.'s Mem. at 12. Uniface concedes this point. Pl.'s Opp'n at 16. The Court therefore finds that this factor weighs in favor of abstention.

### j. Vexatious or Contrived Nature of Federal Action

Finally, Sysmex asserts that Uniface has brought this action "to serve its needs in its Belgian lawsuit." Def.'s Mem. at 13. Specifically, Sysmex has alleged that

Uniface's purpose is an "end-run around Belgium's 'no discovery' rule." *Id.* But, as will be discussed below, the claims asserted in this case properly state legally cognizable causes of action and are not frivolous. Therefore, this factor weighs against abstention.

### k. Balancing the Factors

In sum, the majority of the *Colorado River* factors weigh against abstention of Uniface's claims. Three of the ten factors weigh in favor of a stay, but Sysmex has not persuaded the Court that these three factors come close to outweighing the others. Therefore, even if the cases were parallel, the present case is not an "extraordinary circumstance" warranting a stay. The motion to stay is denied.

## C. Motion to Dismiss Under Rule 12(b)(6)

Finally, Sysmex moves to dismiss the claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons provided below, the motion too is denied.

### 1. Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). An allegation "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The complaint "need only provide a short and plain statement of the claim showing that the pleader is entitled to relief,

19

sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008); *see also* Fed. R. Civ. P. 8(a)(2). In reviewing a motion to dismiss, a court must accept as true all well-pleaded allegations in the complaint and must draw inferences in the plaintiff's favor. *See Tamayo*, 526 F.3d at 1081.

### 2. Count I: Direct Copyright Infringement

Sysmex first moves to dismiss the claim for direct copyright infringement. A claim of direct copyright infringement comprises two elements: (1) "ownership of a valid copyright," and (2) "copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The act of "copying," however, refers more broadly to infringing upon any one of a copyright owner's exclusive rights as listed in the Copyright Act: namely, reproduction, preparation of derivative works, distribution, public performance, public display, and for sound recordings, public performance by digital audio transmission. 17 U.S.C. § 106; *see Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613, 617 (7th Cir. 2014).

### a. Ownership of a Valid Copyright

Sysmex first argues that Uniface does not identify "the allegedly infringing work." Pl.'s Opp'n at 15. Specifically, Sysmex asserts that, other than the title and general purpose of the Uniface Platform, Uniface provides no identifying information, and does not attach any software or resulting output from the software to the Complaint. *Id.* Sysmex additionally argues that the twenty-four listed copyright

registrations provided in the Complaint are uninformative and do not permit Sysmex to identify whether any of the works cover the Uniface Platform.

In support of its arguments, Sysmex relies upon *Design Basics, LLC v. WK Olson Architects, Inc.*, No. 17 C 7432, 2018 WL 3629309, at *2 (N.D. Ill. July 31, 2018), and *Flava Works, Inc. v. Clavio*, No. 11 C 05100, 2012 WL 2459146, at *2 (N.D. Ill. June 27, 2012). These cases are distinguishable, however.

In *Design Basics*, the parties conceded that the plaintiff owned a valid copyright, thereby satisfying the first prong of a direct copyright infringement claim. *Design Basics*, 2018 WL 3629309, at *2. The dispute was whether the plaintiff adequately pleaded sufficient facts that the defendant copied the constituent elements of the copyrighted work. *Id.* This inquiry relates to the second prong of a direct copyright infringement claim and, therefore, does not support Sysmex's position.

In *Flava Works*, the court dismissed a complaint where the plaintiff merely pleaded that the defendant "downloaded copyrighted videos of Flava Works . . . and posted and distributed the aforesaid videos on other websites" with nothing more. *Flava Works*, 2012 WL 2459146, at *2. By contrast, Uniface has not only described the functionalities and uses of the Uniface Program, it has identified the relevant copyright registration numbers thereof. Compl. ¶¶ 8–9. This is sufficient to put Sysmex on notice of Uniface's allegations. Indeed, Sysmex acknowledges that its defense will include a "comparison of the Uniface Software Program to Sysmex's WAM Software," thereby suggesting Sysmex is aware of what it is accused of copying.

21

Def.'s Mem. at 10.

In addition, Sysmex alleges that Uniface has not adequately pleaded ownership in at least twelve of the twenty-four listed copyright registrations that do not list "Uniface B.V." as the copyright owner. This is incorrect. Uniface is the named owner of twelve of the listed copyright registrations, and its recognized predecessor-in-interest, Compuware Corporation—the party with which Sysmex contracted in the VAR Agreement—is the named owner of eleven of the listed copyrights. There is a single copyright registration with the title of "Uniface firmware" that is owned by a "Charles Williams Meredith." Uniface's pleading has created a plausible inference that it owns the listed copyrights, and Sysmex has sufficient notice to seek discovery of the chain of title of the copyright registrations.

### b. Copying of Constituent Elements

Finally, Sysmex argues that Uniface has failed to sufficiently allege that Sysmex copied constituent elements of the Uniface Platform. But as Sysmex concedes, Uniface has pleaded that Sysmex has continued to use the Uniface Platform following termination of the VAR Agreement. *See* Compl. ¶ 27. Specifically, Uniface has alleged that Sysmex continued to internally use and continued to distribute, the Uniface Platform after July 29, 2020, without permission. Compl. ¶¶ 31–32. Because of the nearly two decades long contractual relationship between the parties described in the Complaint, as well as Sysmex's admission that its defense will involve comparing the Uniface Platform to its own WAM Software, the allegations are sufficient to survive at the pleading stage. The motion to dismiss under Rule 12(b)(6)

is denied with respect to Count I.

### 3. Count II: Contributory Copyright Infringement

Sysmex moves to dismiss the claim for contributory copyright infringement, arguing that the claim necessarily fails because of Uniface's failure to state a claim for direct copyright infringement. Pl.'s Opp'n at 19. To be sure, "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (internal citations omitted). Thus, there can be no contributory or vicarious infringement without proof of direct infringement by a third party.

Because the Court finds Uniface's allegations sufficient with respect to direct copyright infringement, and Sysmex offers no alternative or additional arguments to support dismissal of the claim for contributory copyright infringement, the motion to dismiss is denied with respect to Count II.

## III.    Conclusion

For the reasons discussed above, Defendant's motion to dismiss, or alternatively to stay, is denied.

**IT IS SO ORDERED.**                    **ENTERED: 6/4/21**

_____
**JOHN Z. LEE**
**United States District Judge**